UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

WAYNE PRATER,                                  :
                          Petitioner,          :
                                               :
            v.                                 :        No. 2:24-cv-3298
                                               :
JOHN SAWTELLE,                                 :
THE DISTRICT ATTORNEY FOR THE                  :
COUNTY OF PHILADELPHIA, and                    :
THE ATTORNEY GENERAL FOR THE                   :
STATE OF PENNSYLVANIA,                         :
                          Respondents.         :

_____

**O P I N I O N**
**Report and Recommendation, ECF No. 28—Adopted**

**Joseph F. Leeson, Jr.**                                  **August 6, 2025**
**United States District Judge**

## I.    INTRODUCTION

In this habeas action, *pro se* petitioner Wayne Prater challenges the constitutionality of

his aggregate sentence of 29-58 years' imprisonment, arising from his convictions for burglary,

aggravated assault, risking a catastrophe, and related crimes. In support of this, Prater alleges that

his counsel was ineffective, that his aggregate sentence is excessive, and that the Philadelphia

County Court of Common Pleas and the Pennsylvania Superior Court, respectively, erred in

denying and affirming denial of, his second PCRA petition on the basis of untimeliness.

On July 11, 2024, Prater filed the instant Petition for Writ of Habeas Corpus. *See* Pet.,

ECF No. 2. On April 28, 2025, Magistrate Judge Elizabeth T. Hey issued a Report and

Recommendation ("R&R"), *see* ECF No. 28, in which she recommended that the Petition be

dismissed in part as untimely and denied in part as meritless to the extent the claims challenge

Prater's 2020 resentencing. Prater subsequently filed *pro se* objections to the R&R on May 19,

2025. *See* Obj., ECF No. 29. After review of the habeas petition, the R&R, and Prater's *pro se*

objections, and for the reasons that follow, this Court overrules the objections, adopts the R&R,

and denies and dismisses Prater's petition.

## II.    RELEVANT BACKGROUND

### A.    Prater's offense, conviction, and subsequent challenges

The Pennsylvania Superior Court, in its decision affirming the order imposing Prater's

revised judgment of sentence and the order of the Philadelphia County Court of Common Pleas,[1]

which granted and denied in part Prater's amended (first) PCRA petition,[2] summarized the facts

and circumstances underlying Prater's conviction and sentencing, as follows:

> Appellant stands convicted of multiple crimes against his estranged girlfriend and
> the mother of his children. On September 15, 2009, the victim obtained a Protection
> From Abuse order that evicted Appellant from the victim's home and directed
> Appellant to refrain from any contact with her. On November 30, 2009, Appellant
> made several harassing phone calls to the victim, smashed her car windows, threw
> a brick through her home window and slashed her tires. On December 2, 2009,
> Appellant broke into the victim's home and caused water to pour from the bathtub
> that he plugged up on the second floor to the first floor through the ceiling. Later
> that same day, when police spotted Appellant, he fled, resisted arrest, and
> threatened the arresting officers. On August 16, 2010, Appellant demanded money
> from the victim and physically assaulted her. On August 18, 2010, police informed
> the victim that someone had called 911 claiming that she was going to kill herself

---

[1]    The R&R references this factual history and there does not appear to be any dispute as to
its accuracy. To the extent the Court recognizes minute differences between the R&R and the
state record, it will make note thereof.

[2]    The R&R states, and the Pennsylvania Superior Court Opinions of July 9, 2021 and
February 22, 2024 suggest, that Prater's March 2015 PCRA petition was his "first" and his
December 2021 PCRA petition was his "second" of such petitions. Technically, these comprise
Prater's *second* and *third* PCRA petitions because he filed his first petition on March 25, 2013, in
between his November 2012 sentencing and the April 2014 affirmation of sentence on direct
appeal. *See* State Record, ECF No. 25 at 141-44; *Commonwealth v. Prater*, No. 1709 EDA 2017,
2018 WL 5728677, at *1 (Pa. Super. Ct. Nov. 2, 2018) ("On March 25, 2013 Prater filed a *pro se*
PCRA petition and counsel was appointed."). However, because the March 2013 PCRA was
short-lived and only requested a reinstatement of Prater's direct appeal rights, *see id.*, and
because both Magistrate Judge Hey and Prater refer to his March 2015 PCRA petition as his
"initial" PCRA, this Court will do the same in this opinion, and will refer to the March 2015
PCRA and December 2021 PCRA as his "first" and "second" petitions, respectively.

with a bomb. On August 19, 2010, the victim returned home to find her house again flooded and a pipe bomb in her basement. Police found Appellant's fingerprint on a bag containing an incendiary fuse nearby. On August 20, 2010, police again arrested Appellant and found a cellphone on him that was used to call 911 to inform authorities that the victim supposedly intended to kill herself with a bomb.

Appellant was charged in six separate cases, which the court consolidated for trial. The jury found Appellant guilty of three counts of contempt of a court order; two counts each of assault, harassment, burglary, and terroristic threats; and one count each of criminal trespass, criminal mischief, resisting arrest, stalking, endangering another person, aggravated assault, risking a catastrophe, possession of an instrument of crime, and making offensive weapons. On November 2, 2012, the court sentenced Appellant to an aggregate term of 35½ to 71 years of imprisonment, including a sentence of 10 to 20 years of imprisonment for risking a catastrophe,[3] a third-degree felony under 18 Pa.C.S.A. § 3302. On April 7, 2014, [the Pennsylvania Superior] Court affirmed on direct appeal. Appellant did not file a petition for allowance of appeal with our Supreme Court.

On March [2], 2015,[4] Appellant filed a *pro se* PCRA petition.[5] Counsel was appointed and was permitted to withdraw without filing an amended petition. New counsel was appointed and submitted a letter stating that the issues in Appellant's petition were meritless and there were no other issues of arguable merit that could

---

[3]    On appeal from this original sentence (and later, on appeal from the denial of Prater's first PCRA petition), the Pennsylvania Superior Court labeled this as a conviction for "causing or risking a catastrophe," not one or the other, seemingly in reference to the overarching criminal statute, 18 Pa.C.S. § 3302 ("Causing or risking a catastrophe"). *Prater*, 2018 WL 5728677, at *1; *Commonwealth v. Prater*, No. 1136 EDA 2013, 2014 WL 10965051, at *1 (Pa. Super. Ct. Apr. 7, 2014). In her R&R, Judge Hey states that originally, "Prater was charged with causing a catastrophe, but the jury was given instructions on risking a catastrophe, a lesser included offense . . . . Prater was later resentenced for risking, rather than causing, a catastrophe." R&R, ECF No. 28, at 2 n.2. Briefings by both sides in the PCRA litigation also indicate that the original charge was causing a catastrophe and later amended on remand to risking a catastrophe. *See* State Record at 534-37, 565-66. For our purposes it does not matter, and the Court will not speculate, whether the PCRA litigants intended to convey that Prater was originally convicted in 2012 for "causing a catastrophe," under 18 Pa.C.S. § 3302(a), and sentenced accordingly, despite the jury being instructed on "risking" (§ 3302(b)), or whether Prater was originally convicted in 2012 for "risking a catastrophe," under 18 Pa.C.S. § 3302(b), and the jury properly instructed, but that he was incorrectly sentenced according to the guideline range for "causing" (§ 3302(a)).

[4]    The Pennsylvania Superior Court Opinions of July 9, 2021 and February 22, 2024 state that Prater's initial PCRA petition was filed on March 15, 2015, but there is no support for this date in the pleadings before us. Prater's habeas petition, the response thereto, the R&R, and Prater's Objections thereto all state that Prater filed his initial PCRA petition on March 2, 2015. *See* ECF Nos. 2 at 4; 20 at 3; 28 at 10; and 29 at 3. What is more, the March 2015 PCRA petition included in the state court record is dated March 2, 2015. *See* State Record at 235. This Court will accept the filing date as stated in the record, pleadings, and by the parties currently before it.

[5]    The Pennsylvania Post Conviction Relief Act ("PCRA") is codified at 42 Pa.C.S. §§ 9541-9551.

be raised. On May 31, 2017, the PCRA court dismissed Appellant's petition. Appellant appealed to this Court, which held that counsel's analysis of the PCRA claims had been cursory and incomplete and remanded the matter to the PCRA court for further consideration. In 2019, new PCRA counsel filed an amended petition and supplemented that petition several times. In the amended PCRA filings, Appellant contended that his sentence of 10 to 20 years of imprisonment for risking a catastrophe was illegal because this offense is a third-degree felony carrying a maximum sentence of 7 years of imprisonment. In the same filings, Appellant raised multiple claims of ineffective assistance of counsel during trial.

On January 28, 2020, the PCRA court convened a video hearing on Appellant's PCRA claims. The PCRA court determined that it would resentence Appellant to 3½ to 7 years of imprisonment for risking a catastrophe while keeping all other sentences the same, resulting in a new aggregate sentence of 29 to 58 years of imprisonment. Appellant's attorney requested that the new sentence for risking a catastrophe run concurrently with the other sentences, thereby reducing Appellant's total sentence to 25½ to 52 years of imprisonment. N.T., 1/28/20, at 21-22. The Commonwealth objected to this request. The court denied counsel's request for a concurrent sentence on the charge of risking a catastrophe, relying on its comment at the 2012 sentencing that an above-guidelines sentence was proper due to Appellant's lack of remorse and the threat he posed to the victim. *Id.* at 29-31.

After counsel informed Appellant of his right to appeal his sentence, the Commonwealth asked the court to address Appellant's claims of ineffective assistance. . . . The court heard argument on the ineffective assistance claims and denied relief. *Id.* at 34-38.

On January 28, 2020, the PCRA court entered a written order granting relief on the sentencing issue and denying relief on the ineffective assistance claims. On the same date, the court issued a new written judgment of sentence imposing a sentence of 3½ to 7 years of imprisonment for risking a catastrophe while keeping the sentences on all other counts the same as in Appellant's original sentence.

On February 3, 2020, Appellant filed motions seeking reconsideration of his new sentence. On February 12, 2020, the court denied these motions. On February 19, 2020, in each of the six consolidated cases, Appellant filed a notice of appeal from both his new judgment of sentence and the denial of PCRA relief on his ineffectiveness claims. . . . By order dated May 5, 2020, this Court consolidated all six of the above-captioned appeals for appeal purposes.

*Commonwealth v. Prater*, 256 A.3d 1274, 1279-80 (Pa. Super. Ct. 2021). On July 9, 2021, the

Pennsylvania Superior Court affirmed Prater's new judgment of sentence and denied his

requested PCRA relief in all other respects. *See id.* at 1288. The Pennsylvania Supreme Court

denied Prater's petition for allowance of appeal on December 1, 2021. *Commonwealth v. Prater*,

268 A.3d 386 (Pa. 2021).

4

Shortly after, Prater filed a second PCRA Petition on December 21, 2021. *See* R&R at 4.

On August 5, 2022, the PCRA court dismissed the second PCRA petition as untimely. *See*

*Commonwealth v. Prater*, 315 A.3d 98, at *2 (Pa. Super. Ct. 2024), *reargument denied* (May 3,

2024). Prater filed notices of appeal, which were consolidated. *Id.* On February 22, 2024, the

Superior Court affirmed the PCRA court's denial of relief, stating the following:

> This Court has held that "a successful first PCRA petition does not 'reset the clock'
> for the calculation of the finality of the judgment of sentence for purposes of the
> PCRA where the relief granted in the first petition neither restored a petitioner's
> direct appeal rights nor disturbed his conviction, but, rather, affected his sentence
> only." . . . Generally, a petition for relief under the PCRA must be filed within one
> year of the date the judgment becomes final unless the petition alleges, and the
> petitioner proves, a statutory exception to the time for filing the petition. 42 Pa.C.S.
> § 9545(b)(1). There are three exceptions to the time bar: (1) interference by
> government officials in the presentation of the claim; (2) newly discovered facts;
> and (3) an after-recognized constitutional right. . . . We agree that Appellant's
> petition is untimely. When the PCRA court re-sentenced Appellant for risking a
> catastrophe, it "affected his sentence only" and "did not 'reset the clock' for the
> calculation of the finality of [Appellant's] judgment of sentence."

*Id.* at *3 (internal quotations and citations omitted). The Superior Court also denied

Prater's application for reargument. *See* R&R at 4-5. Prater did not seek review in the

Pennsylvania Supreme Court. *Id.*

### B.  Prater's Habeas Petition and Respondents' Opposition

Prater filed his Petition for Writ of Habeas Corpus on July 11, 2024.[6] *See* Pet., ECF No.

2. In it, Prater contends that he received ineffective assistance of counsel at the trial level, on

appeal, and at every stage of his PCRA litigation; that his sentence violates *Apprendi v. New*

---

[6]    We will employ the same reasoning articulated by Magistrate Judge Hey in the R&R, *see*
ECF No. 28, at 5 n.5, and employ the prison "mailbox rule." *Burns v. Morton*, 134 F.3d 109, 113
(3d Cir. 1998) (explaining that under the "mailbox rule," a petition is deemed filed when given to
prison authorities for mailing) (referencing *Houston v. Lack*, 487 U.S. 266 (1988)). Prater dated
the habeas petition July 11, 2024, and mailed it to the Clerk of Court of the Third Circuit Court
of Appeals, who transferred it to this Court. We deem the habeas petition filed on July 11, 2024,
despite it not being docketed until July 17, 2024. *See* ECF No 2.

*Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013); and that the trial court erred in three major ways: by failing to address his suppression motion, imposing an "excessive sentence" above the guideline range, and finding his PCRA petition untimely. *See* Pet.

On August 7, 2024, the matter was referred to Magistrate Judge Elizabeth T. Hey for a Report and Recommendation as to whether the habeas petition should be granted. *See* ECF No. 7. On December 5, 2024, Respondents filed a Response to the Petition for a Writ of Habeas Corpus, *see* ECF No. 20, arguing that the habeas petition is untimely, or alternatively, that Prater's claims regarding excessive sentences and PCRA timeliness are not cognizable on habeas review, and that his ineffective assistance of counsel claims are procedurally defaulted and/or meritless. *See id.* Magistrate Judge Hey issued her R&R on April 28, 2025. *See* R&R.

### C. The Report and Recommendation and Objections

In her R&R, Judge Hey recommends that Prater's July 11, 2024 habeas petition be dismissed as untimely, for two reasons: (1) because Prater's original sentence was final on May 7, 2014, and his initial PCRA Petition remained pending until December 1, 2021, so the deadline to file a habeas petition regarding his original sentence expired on February 7, 2022; and (2) because his resentencing on the risking a catastrophe charge was final on March 1, 2022, and his second PCRA Petition was dismissed as untimely, so the deadline to file a habeas petition regarding his resentencing expired on March 1, 2023. *See* R&R at 18. In the alternative, Judge Hey recommends that the habeas petition be dismissed because Prater's claims are meritless and incognizable to the extent they attack his 2020 resentencing. *See id.*

1. **Statutory Tolling**[7]

a. *Prater's Original 2012 Conviction*

The R&R recounts that Prater's November 2, 2012, sentencing for causing a catastrophe, burglary, aggravated assault, harassment, resisting arrest, stalking, and contempt was affirmed by the Pennsylvania Superior Court on April 7, 2014. *See* R&R at 2. Judge Hey reasons that Prater's conviction thus became final on May 7, 2014, thirty days after the Superior Court's decision on direct appeal. *Id.* at 6, 9.

On March 2, 2015, Prater's first PCRA petition was timely filed,[8] and then subsequently denied, appealed, and remanded, resulting in a January 28, 2020, resentencing on only one charge: risking a catastrophe. *Id.* at 6-7. This 2020 resentencing did not affect any of the November 2, 2012, sentences for the other seven charges, which remained unchanged. *See id.* Prater appealed the January 28, 2020, decision in its entirety and on July 9, 2021, the Superior Court affirmed the January 28, 2020, judgment of sentence[9] and affirmed the denial of PCRA relief on all other grounds. *See id.* at 7. The initial PCRA proceedings remained pending until December 1, 2021, when the Pennsylvania Supreme Court denied his petition for allowance of appeal. *Id.* at 10.

In the R&R, Judge Hey contends that because this final relief on the first PCRA petition did not disturb the 2012 convictions, it "did not 'reset the clock' for the calculation of the finality

---

[7]    The one-year habeas limitations period in Pennsylvania begins to run from the date that the petitioner's conviction is final in state court. *See* 28 U.S.C. § 2244(d)(1)(A); *see also* 28 U.S.C. § 2254, Rule 3(c) ("The time for filing a [§ 2254] petition is governed by 28 U.S.C. § 2244(d)").

[8]    "Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1).

[9]    Thus, in its July 9, 2021, opinion, the Pennsylvania Superior Court affirmed on direct appeal the conviction and sentence for risking a catastrophe. *See* R&R at 7.

of [Prater's] judgment of sentence" on those charges. *Id.* at 7 (quoting *Prater*, 315 A.3d at *3 (quoting *Commonwealth v. McKeever*, 947 A.2d 782, 785 (Pa. Super. Ct. 2008))). Thus, the finality date for all of Prater's convictions, *other than* risking a catastrophe, would remain unchanged: May 7, 2014. *Id.* at 6, 9. If Prater, as of May 7, 2014, had used 299 days of his one-year statute of limitations, then as of December 1, 2021, he had 66 days remaining to file his habeas petition. Thus, Judge Hey asserts, Prater's deadline to file a habeas petition was February 7, 2022, *see id.* at 10, which renders the July 11, 2024, habeas petition untimely insofar as it addressed these original convictions.

Prater acknowledges that the relief on his initial PCRA petition was not final until December 1, 2021, leaving 66 days to file his habeas petition. Obj. at 3. However, Prater objects to the assertion that his statute of limitations expired on February 7, 2022. *Id.* Instead, he argues that the limitations period was also tolled during the pendency of his *second* PCRA petition. *Id.* This second petition was filed on December 21, 2021, *id.*, dismissed as untimely on August 5, 2022, *see* R&R at 15 n.13, affirmed on appeal on February 22, 2024,[10] and denied reargument on May 3, 2024, *see* Obj. at 3. Prater contends that he then had thirty days from the Superior Court's denial of his application for reargument to seek allowance of appeal in the Pennsylvania Supreme Court, and thus his second PCRA petition remained pending until June 3, 2024, when that state appeal period expired. *Id.* at 3, 6. According to Prater, this application of statutory tolling renders the July 11, 2024, habeas petition timely with respect to his original convictions.

---

[10]    *See Commonwealth. v. Prater*, 315 A.3d 98 (Pa. Super. Ct. 2024), *reargument denied* (May 3, 2024).

### b.  *Prater's 2020 Resentencing*

After Prater was resentenced on risking a catastrophe on January 28, 2020, the Superior Court affirmed this new judgment of sentence on July 9, 2021, and the Pennsylvania Supreme Court denied Prater's petition for allowance of appeal on December 1, 2021. R&R at 14. In the R&R, Judge Hey asserts that Prater's risking a catastrophe conviction became final on March 1, 2022, *id.*, and cites to *Kapral v. United States* for the holding that a state court criminal judgment becomes "final" when the time for seeking certiorari in the United States Supreme Court expires (i.e., ninety (90) days after the state court of last resort entered its order denying discretionary review), 166 F.3d 565, 571 n.3, 575 (3d Cir. 1999). Prater's one year period in which to file a habeas petition would thus have expired on March 1, 2023, one year after the criminal judgment for risking a catastrophe became final in state court. *See* R&R at 15. Consequently, says Judge Hey, the July 11, 2024, habeas petition was still untimely insofar as it addressed the risking a catastrophe charge. *Id.*

Prater objects, again asserting that the statute of limitations was tolled during the pendency of his second PCRA petition. Obj. at 3. According to Prater, his risking a catastrophe conviction was not final until June 3, 2024, thirty days after the Superior Court denied his application to reargue his second PCRA petition, when his period to seek allowance of appeal in the Pennsylvania Supreme Court expired. *Id.* at 3, 6. By this reasoning, his July 11, 2024, habeas petition was timely with respect to the risking a catastrophe conviction, because it was filed less than 66 days later. *Id.*

### c.  *Timeliness of Second PCRA Petition*

Crucially, the R&R reasons that the second PCRA petition *would have* tolled the limitations period as Prater suggests, *but for* it being dismissed as untimely. R&R at 11, 15. In

support of this, Judge Hey cites to *Pace v. DiGuglielmo* for the proposition that where "the state

court reject[s] petitioner's PCRA petition as untimely, it [is] not 'properly filed,' and he is not

entitled to statutory tolling under § 2244(d)(2)." 544 U.S. 408, 417 (2005). Prater, by contrast,

asserts that his second PCRA petition "was timely filed[,] keeping the 1 year clock stopped."

Obj. at 3. He cites to 42 Pa.C.S. § 9545(b)(1) for the rule that a second or subsequent PCRA

petition "shall be filed within one year of the date the judgment becomes final," and asserts that

he met this deadline because his second PCRA was filed on December 21, 2021, less than one

month after the state court of last resort rendered a final decision on his first PCRA petition on

December 1, 2021. Obj. at 5-6. Additionally, Prater asserts that the habeas limitations period was

tolled during the pendency of his second PCRA petition—from its filing date of March 2, 2015,

to at least May 3, 2024 (when Prater's application for reargument was denied)—even though it

was ultimately dismissed as untimely. *Id.* at 3.

### 2. Equitable Tolling, Actual Innocence, and other Challenges to Sentence

The R&R also discusses whether the habeas petition alleges equitable tolling or actual

innocence, and addresses Prater's challenges to his aggregate sentence.

### a. *Equitable Tolling*

Judge Hey reasons that, because Prater failed to articulate any extraordinary

circumstances which prevented the timely filing of his petition or the assertion of his rights,[11] he

---

[11]    *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that equitable tolling is proper
only where the petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that
some extraordinary circumstances stood in his way' and prevented timely filing.") (quoting *Pace
v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)
(holding that equitable tolling may be appropriate where "(1) the defendant has actively misled
the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting
his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum," or
(4) "when a claimant received inadequate notice of her right to file suit, where a motion for

is not entitled to equitable tolling. *See* R&R at 11-13. The R&R notes that "[i]n his habeas petition, where Prater was asked to address timeliness, he circled section 2244(d)(1)(B), which provides for an alternative start date based on the removal of a state-created impediment to filing," but "Prater fails to identify any such impediment and none is evident from the petition or his appeals." *Id.* at 9-10 n.10. Aside from this, Judge Hey indicates that Prater only made an argument for statutory tolling, and did not articulate a discernible basis for equitable tolling. *Id.* at 13. Having found none in the record herself, and no observable extraordinary circumstances, Judge Hey recommends the Court also find no basis for equitable tolling.

In his Objections to the R&R, Prater contends that he "is entitled to equitable tolling due to the state court's intentional and methodical Government Interference that ignored all Petitioner's serious complaints of his constitutional rights being violated with impunity by every appointed attorney and every judge viewing PCRA and appeal that denied petitioner the equal protections of the law." Obj. at 8. The sub-paragraphs underneath this objection reiterate Prater's ineffectiveness of counsel arguments, seemingly as a means of establishing "extraordinary circumstances" which prevented his timely filing. *See id.*

### b.  *Actual Innocence*

In his habeas petition, Prater makes the following allegations: that he was made to "look like a monster, and Not the Appropriate Parties that committed these crimes;" Pet. at 31, and that he seeks "to prove his innocence and that his conviction was unlawful," *id.* at 54. In support of this, Prater appears to make three separate arguments in his petition, all of which challenge the sufficiency of evidence presented at his trial and highlighted on appeal, namely: (i) the

---

appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her.") (internal quotations omitted).

legitimacy of a fingerprint found at the scene,[12] (ii) the legality of the confiscation and search of his cell phone,[13] and (iii) the lack of direct evidence showing his entry into the victim's home.[14]

To this effect, the R&R addresses the possibility of actual innocence as a means of overcoming the habeas limitations period, but asserts that Prater did not supplement his claim with new evidence of factual innocence.[15] *See* R&R at 13-14. In his Objections, Prater states that he "plead not guilty to all charges, which is him saying he is innocent of all charges, so why does he have to say the word over & over again?" Obj. at 1. He does not put forth additional objections. *See id.*

### c. *Challenges to Sentence*

In his habeas petition, Prater argues that his aggregate sentence is excessive and violates *Alleyne v. United States*, 570 U.S. 99 (2013) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000)

---

[12]     Prater alleges in his petition that his direct appeal counsel filed a brief which stated, "Appellant's finger print was found on the bomb," Pet. at 47, when in fact his fingerprint "was only found on a plastic bag found in the basement," *id.* at 40, and that "no where in the record does it state Petitioner's finger print is on the bomb," *id.* at 47. Separately, Prater questions whether his fingerprint on the bag in the basement may have been "placed by police." *Id.* at 40.

[13]     Prater alleges that at the time of the offense and investigation he had a "legitimate expectation of privacy" in his cellphone, which he regards as an "effect," and that "Petitioner's cell phone search was unlawful at [its] inception and is Not Validated by what it allegedly turned up," because "[t]he cell phone was locked and No information could be viewed without lock code being entered," and "[e]vidence seized during an unlawful/illegal search Can Not constitute proof against Petitioner." *Id.* at 42-43.

[14]     Prater states "[t]here is no evidence that Petitioner entered the residence surreptitiously or by force. In fact there is no evidence at all regarding the manner of entry into residence if done by Petitioner[,] and mere suspicion or conjecture that Petitioner entered into residence." *Id.* at 54-55. He also alleges that "[t]here is insufficient evidence []to prove Petitioner's identity as the per[p]etrator of the alleged burglary. . . . No evidence submitted has proven Petitioner's guilt beyond a reasonable doubt . . . [t]he only thing proven is Petitioner was in area of property . . . and that is not a crime." *Id.*

[15]     *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) ("To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.").

because the lower court sentenced him "without giving any of the elements to a jury and being found beyond a reasonable doubt by chosen jury." Pet. at 30. Prater claims that he "was given over the maximum sentence," *id.*, because the sentencing judge misconstrued his demeanor as a lack of remorse and failed to consider the sentencing guidelines, *id.* at 31.

The R&R states that Prater's resentencing of 3.5-7 years on the risking a catastrophe charge was within the state law maximum,[16] and therefore does not violate *Apprendi*, as Prater suggests in his habeas petition. R&R at 16. In his Objections, Prater does not respond to Judge Hey's statement that the sentence was within the maximum, but suggests that the sentencing judge was overly influenced by her opinion of Prater's character when making her determination, and that he would not have been sentenced on these counts if not for his ineffective assistance of counsel at trial, which he argues led to his "unlawful convictions." *See* Obj. at 4-5, 8-9.

## III.    LEGAL STANDARDS

### A.    Report and Recommendation – Review of Applicable Law

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process"). "District Courts, however, are not required to make any separate findings or conclusions when reviewing a Magistrate

---

[16]     *See* 18 Pa.C.S. § 3302(b) (categorizing risking a catastrophe as a felony of the third degree); 18 Pa.C.S. § 106(b)(4) ("A crime is a felony of the third degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than seven years.").

Judge's recommendation de novo under 28 U.S.C. § 636(b)." *Hill v. Barnacle*, 655 F. App'x.

142, 148 (3d Cir. 2016). The district court "may accept, reject, or modify, in whole or in part, the

findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C).

> ### B.    Certificate of Appealability – Review of Applicable Law

A certificate of appealability ("COA") should only be issued "if the petitioner 'has made

a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x

224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the

constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

*v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court "denies a habeas petition on

procedural grounds without reaching the prisoner's underlying constitutional claim," a COA

"should issue when the prisoner shows, at least, that jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right and that jurists of

reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

## IV.    ANALYSIS

> ### A.    Statutory Tolling

"A 1-year period of limitation shall apply to an application for a writ of habeas corpus by

a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). This

limitation period runs from the latest of four occurrences, including "the date on which the

judgment became final by the conclusion of direct review or the expiration of the time for

seeking such review." *Id.* The limitations period is also tolled during the pendency of "a properly

filed application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim." *Id.* at § 2244(d)(2). Thus, the time during which a properly filed PCRA

petition is pending "shall not be counted toward any period of limitation" under 28 U.S.C. § 2244(d).

Here, the "latest" occurrence under § 2244(d)(1) is the date from which Prater's judgment in the state court became final, either by the conclusion of direct review or the expiration of time for seeking direct review. The finality dates for Prater's original convictions are, for the most part, not objected to. The main issues, as considered by Judge Hey in the R&R and discussed in Prater's Objections, turn on whether his second PCRA petition was timely and affected the finality date for the risking a catastrophe conviction, and whether one or both of Prater's PCRA petitions tolled the limitations period. The Court agrees with the reasoning in the R&R, and finds that the first PCRA petition tolled the limitations period but the second PCRA petition did not, because it was untimely. This conclusion likewise renders the instant habeas petition untimely.

### 1. Finality of Judgments of Sentence

The concept of "finality" has been "variously defined; like many legal terms, its precise meaning depends on context." *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (quoting *Clay v. United States,* 537 U.S. 522, 527 (2003)). In this context, "the finality of a state-court judgment is expressly defined by statute as 'the conclusion of direct review or the expiration of the time for seeking such review.'" *Id.* (citing 28 U.S.C. § 2244(d)(1)(A)).

Where a prisoner does not appeal his conviction or sentence to the state's highest court, his judgment becomes "final" under § 2244(d)(1)(A) when the time for seeking review with the state's highest court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150, 154 (2012). Where a prisoner appeals to the state's highest court, and thereafter chooses to file a petition for a writ of certiorari with the United States Supreme Court, his judgment becomes "final" when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ

of certiorari." *Id.* at 149. Where a prisoner appeals to the state's highest court but does not subsequently file a petition for a writ of certiorari, his judgment becomes "final" upon "expiration of the time for seeking such review." *Id.* at 149-50; *Jimenez*, 555 U.S. at 119 ("[I]f the federal prisoner chooses not to seek direct review in [the Supreme] Court, then the conviction becomes final when 'the time for filing a certiorari petition expires.'") (quoting *Clay*, 537 U.S. at 527). The petitioner's certiorari "window" closes ninety days after entry of the highest state court's order denying discretionary review. U.S. Sup. Ct. R. 13. Direct review of a conviction "cannot conclude for purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts . . . and to [the Supreme] Court . . . has been exhausted." *Jimenez*, 555 U.S. at 119.

Here, the finality date for all of Prater's convictions *other than* risking a catastrophe was May 7, 2014. This fell thirty days after the Superior Court's decision on direct appeal of Prater's November 2, 2012, sentence, since he chose not to seek review of that decision in the Pennsylvania Supreme Court. *See Gonzalez*, 565 U.S. at 154; *LaCava v. Kyler*, 398 F.3d 271, 273 (3d Cir. 2005); *Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000) ("[T]he period of limitation tolls during the time a prisoner has to seek review of the Pennsylvania Superior Court's decision[,] whether or not review is actually sought."); *see also* Pa. R.A.P. 1113 ("[A] petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court."); R&R at 2 ("On April 7, 2014, the Superior Court affirmed the judgment of sentence.").

As for the risking a catastrophe conviction, Prater was resentenced on this charge on January 28, 2020, and the Superior Court affirmed the new sentence on July 9, 2021. *Id.* at 3-4, 14. In contrast to his other convictions, Prater sought direct review of his risking a catastrophe sentence in the Pennsylvania Supreme Court, which denied his petition for allowance of appeal

on December 1, 2021. *See id.* Subsequently, the risking a catastrophe conviction became final on March 1, 2022, once Prater's time to file a petition for a writ of certiorari in the United States Supreme Court expired and Prater had completely exhausted his availability of direct appeal. *See Gonzalez*, 565 U.S. at 150; *Jimenez*, 555 U.S. at 119; *see also* U.S. Sup. Ct. R. 13 ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). The Court agrees with Judge Hey's calculations of the finality dates for Prater's convictions.[17]

### 2.   Timeliness of Second PCRA Petition

A petition under the Post Conviction Relief Act "shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that: (i) the failure to raise the claim previously was the result of interference by government officials . . . (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence;" or (iii) the right asserted is newly recognized by the Pennsylvania or United States Supreme Court and applies retroactively. 42 Pa.C.S. § 9545(b)(1). Prater argues that because his second PCRA Petition was filed just twenty days after the Pennsylvania Supreme Court rendered a final decision on his first PCRA petition,

---

[17]     Sections IV(A)(2),(3), *infra*, explain why the exact finality dates of Prater's convictions do not matter for purposes of determining whether his instant habeas petition is timely. The fact that a ruled-untimely PCRA petition is not "properly filed," and thus cannot toll the habeas limitations period, *see Pace*, 544 U.S. at 414, means that Prater's convictions were "final" well before the date he filed for habeas relief in our Court. Even if his habeas limitations period *began* to run on either finality date, his July 11, 2024, habeas petition would still be several years too late. Nonetheless, this Court will engage in a de novo review of the finality date calculations in the R&R insofar as they were objected to or challenged by Prater in his Objections. *See Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).

it was timely. In doing so, Prater incorrectly classifies December 1, 2021 as the date of his final

judgment of sentence with respect to his convictions.[18] This 2021 decision, however, did not

have the effect of resetting the finality date for *any* of his judgments of sentence, including on the

risking a conviction charge, because "where the relief granted in the first [PCRA] petition neither

restored a petitioner's direct appeal rights nor disturbed his conviction, but, rather, affected his

sentence only," it "does not 'reset the clock' for the calculation of the finality of the judgment of

sentence." *Prater*, 315 A.3d at *3 (quoting *McKeever*, 947 A.2d at 785). In affirming the PCRA

court's finding that Prater's second PCRA petition was untimely, the Superior Court explained

its reasoning as follows:

> This Court affirmed Appellant's judgments of sentence on April 7, 2014. Because
> Appellant did not seek review with the Pennsylvania Supreme Court, the judgments
> of sentence became final on May 7, 2014. Appellant had to file his PCRA petition
> on or about May 7, 2015, to be timely, unless he pled and proved an exception to
> the time-bar. Appellant filed his [second] petition on December 21, 2021, and did
> not plead or prove an exception to the time-bar.

*Prater*, 315 A.3d at *3-4 (internal citations omitted). In essence, where the first PCRA related to

Prater's original convictions, its ultimate resolution did not alter the "final judgments of

sentence" for purposes of the one-year statute of limitations to seek PCRA relief under 42

Pa.C.S. § 9545(b). Prater did not directly appeal to the Pennsylvania Supreme Court after his

original aggregate sentence was affirmed on April 7, 2014. One month thereafter, his window to

do so expired on May 7, 2014. One year after that, his window to file a PCRA petition expired

on May 7, 2015. To the extent the second PCRA petition, filed December 21, 2021, challenged

the original convictions, it came far too late. To the extent it challenged his 2020 resentencing on

---

[18]     As discussed herein, *supra*, on December 1, 2021, the Pennsylvania Supreme Court
denied Prater's petition for allowance of appeal of the Superior Court's July 9, 2021, decision
affirming Prater's new sentence on risking a catastrophe and denying his requested PCRA relief
in all other respects. *See also* R&R at 4.

risking a catastrophe, that resentence "affected his sentence only" but did not "disturb his conviction" for section 9545(b) purposes. *See McKeever*, 947 A.2d at 785. Even so, this Court does not read Prater's second PCRA petition to challenge his resentence on risking a catastrophe; it (again) argued that his "aggregate sentence" was greater than necessary and that his legal counsel was ineffective, plus a myriad of other blurred issues which largely relate back to his original convictions. *See* State Record, ECF No. 25 at 664-721. Outside of these considerations, Prater has not shown that one of the exceptions to timeliness listed in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies, and the Court has no reason to otherwise believe such an exception applies. The Court agrees with Judge Hey and the Pennsylvania Superior Court that Prater's second PCRA petition was untimely.

### 3.   Timeliness of Habeas Petition

The one-year habeas limitations period in Pennsylvania begins to run from the date that the petitioner's conviction is final in state court. *See* 28 U.S.C. § 2244(d)(1)(A).[19] "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

As discussed above, the finality date for all of Prater's convictions other than risking a catastrophe was May 7, 2014. On March 2, 2015, Prater timely filed his first PCRA petition on the 299th day of the one-year habeas limitations period. *See* 28 U.S.C. § 2244(d). This habeas period was statutorily tolled until the resolution of his first PCRA petition in December 2021, by which point Prater had been resentenced on his risking a catastrophe conviction and the Superior

---

[19]     *See* 28 U.S.C. § 2254, Rule 3(c) ("The time for filing a [§ 2254] petition is governed by 28 U.S.C. § 2244(d)").

Court had affirmed Prater's new judgment of sentence and denied PCRA relief in all other

respects. *See Prater*, 268 A.3d 386. When the Pennsylvania Supreme Court denied Prater's

petition for allowance of appeal on December 1, 2021, Prater had 66 days left to file a habeas

petition with respect to these convictions. Instead, he filed a second PCRA petition on December

21, 2021.

Prater's argument that his second PCRA petition also tolled the habeas statute of

limitations is unavailing. Prater asserts that his second PCRA became "final" on June 3, 2024,

after the Superior Court affirmed the PCRA court's dismissal on February 22, 2024, after

reargument was denied on May 3, 2024, and after his one-month appeal window to the

Pennsylvania Supreme Court expired. Yet, the Third Circuit instructs that federal courts are able

"to toll the statute of limitations only when a collateral petition for state relief was submitted

according to the state's procedural requirements, such as the rules governing the time and place

of filing." *Fahy v. Horn*, 240 F.3d 239, 243-44 (3d Cir. 2001) (internal quotations omitted). In

other words, a PCRA petition that is untimely, according to the state's rules on the same, is not

considered "properly filed" for purposes of section 2244(d)(2) and does not toll the habeas

limitations period. *Pace*, 544 U.S. at 414 ("[w]hen a post-conviction petition is untimely under

state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)") (referencing *Carey v.

Saffold*, 536 U.S. 214, 226 (2002)). As discussed in the previous section herein, Prater's second

PCRA petition was correctly judged untimely according to state law. Thus, it was not "properly

filed" for section 2244(d)(2) purposes. The R&R correctly pointed out that the Court cannot

consider the period during which Prater's second PCRA petition was "pending" in its statutory

tolling determination because that petition was dismissed as untimely.

Since only the first PCRA petition tolled the statute of limitations, and Prater had only 66 days left to file a habeas petition after its final resolution on December 1, 2021, his deadline to file a habeas petition regarding his original sentences expired on February 7, 2022. For the reasons discussed in section IV(A)(1), *supra*, Prater's risking a catastrophe conviction became final on March 1, 2022, triggering the start of his habeas limitations period on that sentence. Accordingly, his deadline to file a habeas petition regarding his resentencing expired on March 1, 2023. In either case, Prater's habeas petition was at least one year late with respect to any of his convictions or sentences: he did not file the instant petition until July 11, 2024. *See* Pet. The R&R correctly concluded that the habeas petition was untimely filed.

### B.    Equitable Tolling

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. Prater asserts that he "is entitled to equitable tolling due to the state court's intentional and methodical Government Interference that ignored all Petitioner's serious complaints of his constitutional rights being violated with impunity by every appointed attorney and every judge viewing PCRA and appeal that denied petitioner the equal protections of the law." Obj. at 8. This Court reads this to allege that Prater was prevented from asserting his rights either by the actions of the Philadelphia County Court of Common Pleas, the sentencing judge, the judges hearing his PCRA petitions on appeal, or by counsel's alleged ineffectiveness at each stage of litigation.[20]

---

[20]    Prater appears to meet the diligence requirement. Aside from the deluge of litigation ensuing from his original sentencing and resentencing, Prater also alleges that he "has shown Due Dilligence [sic] in every step to get the State Courts to acknowledge that they ignored these critical errors that would have changed the outcome of the case." Obj. at 3. Thus, this section

To the extent Prater argues that actions of the Court of Common Pleas or the sentencing judge constitute an extraordinary circumstance warranting habeas relief outside the statute of limitations, the Court disagrees. Prater argues that the sentencing judge had "Actual Vindictiveness Against Petitioner" because she "insult[ed]" and "attack[ed] Petitioner's character" before sentencing him. *Id.* at 4-5, 8. Prater also mentions that his "sentences are consolidated" and takes issue that his resentence on risking a catastrophe was not made concurrent with his sentences for other charges. *Id.* at 4-5. Yet, the consideration of Prater's character, behavior, or demeanor, and the ultimate decision to run Prater's sentences consecutively rather than concurrently, all fall under the broad discretion with which the sentencing court is endowed. *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996) ("Imposition of a sentence is vested in the discretion of the sentencing court and will not be disturbed absent a manifest abuse of discretion."). The Pennsylvania Supreme Court has routinely underscored that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (quoting *Commonwealth v. Jones*, 613 A.2d 587, 591 (Pa. Super. Ct. 1992), *overruled in part on other grounds* by *Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002)). When addressing this very issue in 2021, the Pennsylvania Superior Court found no abuse of discretion by the sentencing court in Prater's case, *see Prater*, 256 A.3d 1274, and the Court is similarly disinclined to do so today.

To the extent that Prater argues that his rights were violated by the judges hearing his PCRA petitions on appeal, he does not articulate how. This Court's understanding of the PCRA

---

focuses on the "extraordinary circumstances" requirement for equitable tolling. *See Pace*, 544 U.S. at 418.

court's decisions, and the Pennsylvania Superior Court's review of those decisions on appeal, is articulated above. *See* sections IV(A)-(B), *supra*. Lastly, to the extent Prater argues that he was prevented from asserting his rights due to ineffective assistance of counsel, this Court finds that argument futile for the reasons stated below in section IV(D)(1), *infra*. In all, this Court finds no extraordinary circumstances present such as would warrant equitable tolling.

### C.    Actual Innocence

A habeas petitioner may get around the one year habeas statute of limitations "'to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief' where the petitioner makes 'a credible showing of actual innocence.'" *Satterfield v. Dist. Attorney Philadelphia*, 872 F.3d 152, 159 (3d Cir. 2017) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)). To be credible, an actual innocence claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[A] petitioner asserting actual innocence may not avail himself of the exception 'unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Satterfield*, 872 F.3d at 159 (quoting *McQuiggin*, 569 U.S. at 386; *Schlup*, 513 U.S. at 329). The R&R rejects Prater's innocence claims on the basis that he failed to present new evidence of innocence, but does not address the factual allegations that Prater does make in support of his innocence argument. Outwardly, Prater's allegations appear to challenge the evidence presented at his trial, so the Court will address them each in turn and compare them to what he has already put forth, to determine if anything new is presented.

In his habeas petition, Prater professes a desire to "prove his innocence" and generally claims that his convictions are unlawful. He decries the sufficiency of the evidence presented at his trial, namely, (i) the legitimacy of a fingerprint found at the scene, which was later determined to be his; (ii) the legality of the confiscation and "search" of his cell phone; and (iii) the lack of direct evidence showing his actual entry into the victim's home—all of which were addressed by the Pennsylvania Superior Court at some point during Prater's direct appeal or PCRA litigation. Ultimately, the Court finds that an inference of actual innocence is not supported in this case, because Prater has not supplemented his claim with new evidence of factual innocence.

### 1. Prater's Fingerprint

The habeas petition alleges that Prater's fingerprint "was only found on a plastic bag found in the basement" of the victim's home. Pet. at 40. Prater takes issue with the weight of this evidence and the fact that the jury still convicted him of charges related to the placement of the pipe bomb, even though "no where in the record does it state Petitioner's finger print is on the bomb." *Id.* at 47. Prater also speculates that this fingerprint could have been "placed by police" in order to obtain a conviction. *Id.* at 40. When reviewing this precise evidentiary challenge on direct appeal, the Pennsylvania Superior Court stated as follows:

> [P]olice found Prater's fingerprint on the bag of fuse for the pipe bomb that Mason discovered in her basement. . . . The fact-finder found all of the foregoing testimony and evidence credible, and we decline to overturn its determination. . . . Prater contends that "there was only one fingerprint on the bag that contained the fuse and the contents in the bag didn't match the fuse in the bomb device thereby making this evidence without weight." This is another weight of the evidence claim. As we discussed previously, the jury heard and considered all of the evidence, including that related to the single fingerprint on the bag. As a whole, the fact-finder found the testimony and evidence in this case credible, and we decline to overturn its determination.

*Commonwealth v. Prater*, No. 1136 EDA 2013, 2014 WL 10965051, at *5 (Pa. Super. Ct. Apr. 7, 2014) (internal citations omitted).

When deciding Prater's first PCRA petition, the Superior Court also addressed Prater's claim that his trial counsel "was ineffective for not filing a motion *in limine* to exclude evidence of the fuses found near the bomb that he planted in the victim's home," and in doing so, articulated why the fingerprint evidence was relevant and of likely importance to the jury's determination:

> This claim is without merit. The police recovered two plastic bags containing rolls of green fuse from the victim's basement, one opened and one unopened. Appellant's fingerprint was found on the opened bag. The fuse in the opened bag was not the same as the one used in the bomb planted by Appellant in the victim's home. The evidence of the fuses was relevant and admissible. . . . In this context, the evidence that Appellant's fingerprint was on a bag containing incendiary fuses in the basement near the bomb was relevant to show that Appellant had access to bomb-building material, to prove his ongoing plan to destroy the victim's house, and to prove his identity as the person who planted the bomb in the victim's basement.

*Prater*, 256 A.3d at 1286. Having already raised this evidentiary concern on direct appeal and in his PCRA, Prater's discussion of the same in his habeas petition serves to rehash an old argument but fails to assert any new evidence beyond that which he already argued in state court. Where the Superior Court twice reviewed and declined to overturn the determination of the factfinder on this issue, so too will this Court decline to disrupt the same.

### 2. Prater's Cellphone

Prater also alleges that at the time of the offense and subsequent investigation he had a "legitimate expectation of privacy" in his cellphone, which he regards as an "effect," and that any search of his cellphone was "unlawful at [its] inception and is Not Validated by what it allegedly turned up," because "[t]he cell phone was locked and No information could be viewed without lock code being entered," and "[e]vidence seized during an unlawful/illegal search Can

Not constitute proof against Petitioner." *Id.* at 42-43. This very argument also formed one of the

bases for Prater's *pro se* suppression motion filed on direct appeal, which was judged a nullity:

> [Another] issue that Prater raises on appeal is "Appellant had a legitimate privacy
> interest in the bag and phone that were confiscated and searched and the evidence
> should have been suppressed." We find that this claim is frivolous. A motion to
> suppress evidence must be made in a pretrial motion, and "[i]f timely motion is not
> made hereunder, the issue of suppression of such evidence shall be deemed to be
> waived." Pa. R. Crim. P. 581(B). In this case, Prater did not file a valid pretrial
> motion to suppress and he therefore waived this claim. Although Prater did file a
> *pro se* motion to suppress, such a motion was a nullity because Prater had legal
> representation when he filed his *pro se* motion.

*Prater*, 2014 WL 10965051, at *6 (internal record citations omitted).

The same argument also formed the basis of an ineffective assistance of trial counsel

argument made in Prater's first PCRA petition. *See Prater*, 256 A.3d 1274. In reviewing the

same, the Superior Court summarized the facts regarding Prater's cellphone as follows:

> Detective Fredericksdorf arrested Appellant with a warrant and found a cell phone
> in Appellant's pocket. When the detective took Appellant to the police district, he
> called a supervisor in the police radio unit to find out the phone number of the call
> warning the police about the bomb in the victim's house. The detective called that
> number, and Appellant's cell phone rang. Without obtaining a second warrant to
> search the cell phone, the detective looked at the originating phone number
> displayed on Appellant's cell phone and recognized it as the number that he had just
> dialed.

*Id.* at 1285. The court also addressed whether the detective's actions would constitute an

unlawful warrantless "search" of the phone, as Prater contends:

> Appellant argues that trial counsel was ineffective for not seeking to suppress
> evidence of Appellant's cell phone number obtained by a detective without a
> warrant. This claim fails, because at the time of Appellant's trial and direct appeal,
> the law relating to warrantless searches of cell phones did not require suppression.
> The law on this subject did not change until after the conclusion of Appellant's
> direct appeal. His trial attorney cannot be found ineffective for failing to anticipate
> this change. . . . Had these decisions been in existence at the time of Appellant's
> prosecution, Appellant's attorney might have had reason to file a motion to suppress
> on the ground that Detective Fredericksdorf violated his constitutional rights by
> looking at the number displayed on Appellant's cell phone without a warrant. These
> decisions, however, were not in effect at the time of Appellant's trial. The first case

> in this chain, *Riley [v. California]*, was not issued until June 25, 2014, one month after the conclusion of Appellant's direct appeal. The law in effect at the time of trial, *McEnany*, did not support a motion to suppress. Because counsel's stewardship must be judged under the existing law at the time of trial, counsel cannot be deemed ineffective for failing to predict future developments or changes in the law.

*Prater*, 256 A.3d at 1285–86 (internal quotations omitted). Having only addressed this issue in the narrow context of an ineffectiveness claim, the Superior Court appeared to equivocate by also stating that, "had these decisions been in existence at the time of [Prater's] prosecution, [his] attorney might have had reason to file a motion to suppress on the ground that Detective Fredericksdorf violated his constitutional rights by looking at the number displayed on Appellant's cell phone without a warrant." *Id.* This Court disagrees. If the governing law on which Prater relies did not come into existence until after his direct appeal, then it certainly did not govern at the time of his arrest and subsequent investigation. Without *Riley v. California* and its progeny, *see* 73 U.S. 373 (2014), the detective's warrantless viewing of Prater's locked phone screen would have been acceptable practice at the time (in 2010). Analogous cases from the Third Circuit and our sister districts suggest that evidence of pre-*Riley* warrantless viewing of locked phone screens need not be suppressed, absent an indication that *Riley* should apply retroactively to warrantless cellphone searches occurring before 2014. *See United States v. Castelluzzo*, 740 Fed. Appx. 226, 228 (3d Cir. 2018) (affirming denial of a motion to suppress where arresting officer looked at texts on the locked phone screen without a warrant, because such was acceptable practice pre-*Riley* and the district court did not err in its application of the good faith doctrine); *United States v. Beasley*, No. 23-179, 2024 WL 4542050 at *6 (W.D. Pa. October 22, 2024) (holding that a detective who answered incoming calls from a seized phone without a warrant, but did not "try to access any of the data within the cell phone," did not conduct a "search of the phone" under *Riley*); *United States v. Cook*, No. 3:CR-16-312, 2021 WL

1534980 (M.D. Pa. April 19, 2021) (finding that an officer who, without a warrant, inadvertently took screenshots and photos on a seized cellphone from the locked home screen, but did not attempt to gain access to its contents, did not conduct a "search of the phone" under *Riley,* and suppression of such evidence was not warranted). In any case, Prater appears to have made the same suppression argument in a different format on multiple occasions. The facts of the detective's handling of Prater's locked cellphone have not changed and Prater has not alleged new evidence to suggest a violation of the warrant requirement. The Court finds no new support for his allegations of constitutional error with respect to this theory of innocence.

### 3.  Prater's Entry into the Home

Lastly, with respect to Prater's other convictions, namely burglary and criminal trespass, he alleges "[t]here is no evidence that Petitioner entered the residence surreptitiously or by force. In fact there is no evidence at all regarding the manner of entry into residence if done by Petitioner[,] only mere suspicion or conjecture that Petitioner entered into residence." Pet. at 54-55. Prater also alleges that "[t]here is insufficient evidence []to prove Petitioner's identity as the per[p]etrator of the alleged burglary. . . . No evidence submitted has proven Petitioner's guilt beyond a reasonable doubt . . . [t]he only thing proven is Petitioner was in area of property . . . and that is not a crime." *Id.* The same argument was made in Prater's first PCRA petition and addressed by the Pennsylvania Superior Court, which concluded that the trial court properly instructed the jury on the elements of the crimes. *Prater*, 256 A.3d at 1283–84. The Superior Court also found that the trial court made clear to the jury that, to convict Prater of burglary or violating a Protection From Abuse Order, they would have "to find that he actually entered the victim's residence," and that, to convict him of criminal trespass, they would have to find that Prater "broke into" the victim's home, "which includes entry by force, breaking, intimidation,

unauthorized opening of locks or through an opening designed for human access." *Id.* at 1283. The court concluded that Prater "was not entitled to a separate instruction that mere presence was insufficient to find him guilty." *Id.* at 1283–84. Thus, in the absence of new evidence of actual innocence, the Court opines that Prater is using these habeas arguments as a means of retrying his case because he disagrees with the conclusions of the factfinder.[21] Such attempts are futile and insufficient to establish new reliable evidence of actual innocence; they do not form the basis for an exception to the one-year habeas limitations period. The Court finds that the habeas time-bar still applies, and Prater's habeas petition is still untimely.

### D.    Exceptions, Challenges, and Other Considerations

#### 1.    *Ineffective Assistance of Counsel*

"The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). In his habeas petition, Prater alleges a slew of ineffective assistance of counsel claims with respect to his counsel at every stage of his litigation: trial, direct appeal, and in litigating his PCRA petitions. The Court shares Judge Hey's recognition that Prater may likely be "presenting layered claims of ineffectiveness to challenge trial counsel's alleged deficiencies," R&R at 18, in which case, his claims are untimely.[22] *See Commonwealth v.*

---

[21]    This Court has before rejected actual innocence claims where "Petitioner simply re-raises sufficiency of the evidence claims that were considered and rejected by the Pennsylvania state courts," because "[b]y re-couching them as actual innocence claims, Petitioner improperly attempts to end run the habeas corpus procedural rules and obtain untimely habeas review of the state court rulings." *Edwards v. Ransom*, No. 19-3495, 2022 WL 17583450, at *3 (E.D. Pa. Dec. 12, 2022). *See also Nellom v. Sober*, No. 21-2835, 2022 WL 3350373, at *7 (E.D. Pa. Aug. 12, 2022) (rejecting actual innocence claim where objections were not directly responsive to the R&R and did not implicate evidence that was unavailable at the time of trial).

[22]    Review of Prater's ineffective trial and direct appeal counsel claims has already been achieved. Prater brought these claims in his first PCRA. Prater's allegations that his trial or appellate counsel failed to request certain jury instructions, to call certain witnesses, to file a

*Bradley*, 261 A.3d 381, 391 (2021) (stating that, generally, claims of ineffectiveness are deferred

to the post-conviction review process). Separately, to the extent Prater seeks to challenge his

PCRA counsel's alleged deficiencies, or even, to causally link their alleged ineffectiveness with

his failure to succeed on his ineffective-assistance-of-trial-counsel claims in his first PCRA, *see,*

*e.g., Martinez v. Ryan*, 566 U.S. 1, 14 (2012), doing so would only afford him the ability to bring

those claims in a second or subsequent PCRA petition[23] or on appeal, *see Bradley*, 261 A.3d at

401 (finding that a petitioner may, "after a PCRA court denies relief, and after obtaining new

counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity

to do so, even if on appeal"); it would not afford him a basis for habeas relief. 28 U.S.C.

§ 2254(i). *See Martinez*, 566 U.S. at 16-17 ("The holding in this case does not concern attorney

errors in other kinds of proceedings, including appeals from initial-review collateral proceedings,

second or successive collateral proceedings, and petitions for discretionary review . . . A finding

of cause and prejudice does not entitle the prisoner to habeas relief.").

---

motion to suppress or motion in limine, and to address the issue of speedy trial, were all given in-
depth de novo review by the Pennsylvania Superior Court in its July 9, 2021, opinion deciding
Prater's first PCRA petition. *Commonwealth. v. Prater*, 256 A.3d 1274 (Pa. Super. Ct. 2021).
The Superior Court affirmed the lower court's order denying Prater's ineffectiveness-of-trial-
counsel claims. *See id.*

[23]      Review of Prater's ineffective PCRA counsel claims has already been achieved, so Prater
is not entitled to this relief, if sought. Prater alleged ineffective assistance of his initial PCRA
counsel in his second PCRA, but the Pennsylvania Superior Court declined to grant such relief
where his second PCRA petition was found untimely. *See Prater*, 315 A.3d 98. Even if the
Superior Court had considered the ineffectiveness-of-PCRA-counsel claims on the merits, Prater
would have had to show that the "record before the appellate court [was] sufficient" to allow for
the disposition of his ineffectiveness claims, or otherwise, request for remand and further
development of the record, which would require he "provide more than mere 'boilerplate
assertions of PCRA counsel's ineffectiveness.'" *Commonwealth v. Bradley*, 261 A.3d 381, 402
(2021).

### 2. *Challenges to Aggregate Sentence*

Insofar as Prater currently seeks to challenge the legality of his original sentence, he has already exhausted his opportunities to do so. To the extent that Prater's first PCRA petition challenged his original sentence (on all charges other than the catastrophe charge), the Superior Court denied that relief on appeal on July 9, 2021, when it affirmed the PCRA court's decision to keep all original sentences and run them consecutively with the new judgment of sentence on risking a catastrophe:

> Appellant contends that the PCRA court abused its discretion by refusing to run his new sentence for risking a catastrophe concurrently with his other sentences. . . . Appellant filed a motion challenging his new sentence that the court denied. We find no abuse of discretion. . . . Appellant does not challenge (nor can he) the PCRA court's authority to enter a new sentence on all counts. He does claim, however, that the new aggregate of 29 to 58 years of imprisonment is unreasonable and instead, should be 25½ to 51 years, a total reached by making the sentence for risking a catastrophe concurrent with the other sentences. Appellant's claims implicate the discretionary aspects of sentencing. . . . The record demonstrates ample justification for Appellant's lengthy sentence. His relentless and escalating pattern of terror against the victim, his egregious acts of repeatedly flooding her house and placing a pipe bomb in her basement, his threat in court to the arresting officer and victim, his arrogant denial of guilt, his insistence that he was an excellent father to the children whom he endangered, his refusal to express remorse, and his defiance towards the court illustrate his danger to the community in general and to the victim and her children in particular. Although his sentence was substantial, it was a proper exercise of the court's discretion.

*Prater*, 256 A.3d at 1287-89. After the Pennsylvania Supreme Court denied Prater's petition for allowance of appeal on this issue, the finality date for all of Prater's convictions, *other than* risking a catastrophe, was cemented as May 7, 2014.

To the extent that Prater's second PCRA petition challenged his original sentence (on all charges other than the catastrophe charge), the Pennsylvania Superior Court in its February 22, 2024, opinion, denied that request for PCRA relief as untimely:

> The Commonwealth observes that Appellant's "present claims relate to his original judgments of sentence." Appellant inartfully argues that his aggregate sentence is

illegal. A legality of sentencing issue must be raised in a timely PCRA petition. "Although legality of sentence is always subject to review within the PCRA, claims must first satisfy the PCRA's time limits or one of the exceptions thereto." . . . This Court affirmed Appellant's judgments of sentence on April 7, 2014. Because Appellant did not seek review with the Pennsylvania Supreme Court, the judgments of sentence became final on May 7, 2014. Appellant had to file his PCRA petition on or about May 7, 2015, to be timely, unless he pled and proved an exception to the time-bar. Appellant filed his petition on December 21, 2021, and did not plead or prove an exception to the time-bar.

*Prater*, 315 A.3d at *3-4 (internal citations omitted).

Separately, to the extent that Prater seeks to challenge his resentence on the risking a catastrophe charge, the Court finds that it violates neither *Apprendi* nor *Alleyne*. *Apprendi* reminds courts that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Alleyne* advanced this rule, finding that an aggravating fact which produces a higher sentencing range "conclusively indicates that the fact is an element of a distinct and aggravated crime," and "must, therefore, be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 116. Yet at Prater's resentencing, no penalty beyond the statutory maximum was given, and no aggravating fact was presented which heightened the statutory maximum range, such that a jury would need to be separately informed and given the opportunity to determine his guilt of an aggravated charge beyond a reasonable doubt. Here, Prater's causing a catastrophe charge, a felony of the first or second degree, was amended to risking a catastrophe, a felony of the third degree. Judge Hey correctly states in the R&R that "[c]ontrary to Prater's claim, the sentence of 3½ -to- 7 years is within the maximum sentence provided by state law. Risking a catastrophe is a felony of the third degree, meaning that the maximum possible prison sentence was 7 years." R&R at 16 (citing 18 Pa.C.S. §§ 3302(b) (defining risking a catastrophe as a felony of the third degree), and 106(b)(4) (listing

maximum sentence for third-degree felony as 7 years). The statutory maximum range was not heightened or exceeded on resentencing, so neither *Apprendi* nor *Alleyene* were violated.

Prater has not otherwise argued that his aggregate sentence is too extreme given the circumstances, *see Mouzon*, 812 A.2d at 624–25 ("[W]hen a trial court imposes a sentence that is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment.'") (quoting *Commonwealth v. Person*, 297 A.2d 460, 462 (Pa. 1972)), and, despite using the word "excessive" to describe his aggregate sentence, has not provided support to that effect. The Court has no reason to assume excessiveness. The Court notes, however, that Prater takes issue with the fact that his resentence on risking a catastrophe was not made concurrent with his other sentences. Nonetheless, as noted above, that decision is within the discretion of the sentencing court. This Court finds no error in Prater's aggregate sentence as it currently stands.

### E.    Certificate of Appealability

A certificate of appealability shall not issue, as jurists of reason would not find it debatable whether this court was correct in its procedural ruling regarding the untimeliness of Prater's habeas petition. *Slack*, 529 U.S. at 484. The Court finds that a certificate of appealability is not warranted.

## V.    CONCLUSION

After de novo review of Prater's habeas petition, the response thereto, the state court record, the R&R, Prater's Objections thereto, and for the reasons mentioned above, the R&R is adopted. The Court finds that Prater's Petition for Writ of Habeas Corpus is untimely and that he has not pled an exception to the timeliness requirement. Accordingly, the Court adopts the conclusion of the R&R that Prater is not entitled to habeas relief. The Court also adopts the

conclusion that there has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability. The petition is dismissed as untimely.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge